A. P. GIANNINI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLORINDA A. GIANNINI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87128, 87127. Promulgated August 15, 1940.

*Andrew F. Burke, Esq., Harry Friedman, Esq.,* and *George H. Koster, Esq.,* for the petitioners.

*T. M. Mather, Esq.,* for the respondent.

550

**554**

OPINION.

VAN FOSSAN: The first issue is essentially one of fact. Briefly it may be outlined thus: Early in 1925 a committee was appointed to determine the proper compensation of the petitioner for his services as president of Bancitaly, of whose stock of 5,200,000 outstanding shares he and his family interests owned only 10,446 shares. Prior thereto petitioner had received no compensation for services from Bancitaly. The committee recommended to the directors on June 27, 1927, that from January 1, 1927, the petitioner should receive, in lieu of salary, 5 percent of the yearly net profits, with a guaranteed minimum of $100,000. From January 1 to July 22, 1927, that percentage amounted to the sum of $445,704.20, which, on November 30, 1927, was credited to his account, offset by certain advances and indebtednesses debited to him by Bancitaly.

On repeated occasions during 1927 the petitioner unequivocally refused to accept any compensation for his services rendered during that year in addition to the $445,704.20 already credited, although such further compensation was estimated by petitioner to amount to $1,500,000. Upon his refusal, and adopting a suggestion made by petitioner, the Bancitaly directors decided to donate the $1,500,000 to the University of California for the establishment of the Giannini Foundation of Agricultural Economics, so named in honor of the petitioner. That action was predicated on their belief that the foundation would be of great use to the public in general and would benefit Bancitaly specifically because of the farmers' loans held by its subsidiary, and also on their desire to pay tribute to the petitioner. The regents of the University of California accepted the gift with observations commendatory to the petitioner.

All proposals and negotiations relating to the donation were carried on exclusively between Bancitaly and the regents. The petitioner's participation in the transaction was confined solely to his suggestions relating to the nature and purpose of the contribution and to his expression of satisfaction "if the corporation should be so minded."

In 1928 it was found that the $1,500,000 estimated to be the amount of the petitioner's compensation for 1927 which he had refused to accept, would not be reached from Bancitaly's net profits. However, Bancitaly paid to the regents the full amount of its offer, with the approval of the petitioner, who assumed responsibility for the miscalculation. The deficiency, $142,392.60, at petitioner's suggestion was charged to the petitioner on Bancitaly's books on July 19, 1928, and was paid from compensation from Bancitaly earned by him subsequent to January 20, 1928.

Upon and subsequent to the petitioner's refusal to accept the $1,357,607.40 representing his percentage of net profits earned from July 23, 1927, to January 20, 1928, neither he nor his wife received any part of that sum by way of cash, credit, or other method of payment or allocation to them and they had no right, title, or interest therein.

The respondent's position seems to be based on the assumption that the petitioner directed and compelled Bancitaly to make the donation, an act which, the respondent asserts, was wholly *ultra vires*. He argues that in January 1928 the petitioner was entitled to receive the $1,357,607.40 as a part of his compensation and, therefore, the diversion of that sum to the University of California constituted, in reality, a gift by petitioner.

We are of the opinion, and have found as a fact, that the petitioner unqualifiedly refused to accept any compensation for the year 1927 in excess of the $445,704.20 credited to him on November 30, 1927, and covering the period from January 1 to July 22, 1927. His first refusal was made shortly after the net earnings of Bancitaly for that period were tentatively ascertained and he repeated that refusal at numerous times thereafter. His refusal was subject to no condition or contingency and relieved Bancitaly of any obligation to pay petitioner the sum in question. The amount in excess of the $445,-704.20, thereafter belonged to Bancitaly to dispose of as it saw fit.

There is nothing in the record in any way impugning or discrediting petitioner's testimony and his exposition of the matter is fully and adequately corroborated by the unrefuted statements of disinterested witnesses and by the records of Bancitaly and of the regents of the University of California. We have no reason to doubt that he declined absolutely to accept the excess compensation for the period from July 23, 1927, to the end of the year. Bancitaly

accepted his decision as final and treated the excess as its own on its books and in its subsequent actions.

It is elemental that an individual may refuse to enforce a right, forswear a debt due him, or relinquish a claim. After such action it is equally basic that his debtor retains full possession and ownership of the thing renounced. It is obvious also that no one is compelled to accept compensation or payment for services or goods. When he refuses to do so he can not be charged with the amount so refused and abandoned, as an item of income. Under no theory of constructive receipt can it be compensation within the meaning and definition of income.

It matters not that the suggestion to make the donation to the University of California came from petitioner. The offer was made by Bancitaly and all details were carried on by its officers and agents. The petitioner took no part whatever in the negotiations or in the completion of the gift. The respondent challenges the right of Bancitaly to make such a donation. We are not concerned with that phase of the matter. It has no bearing on our question.

The respondent further argues that there is no difference between the $1,357,607.40 refused by the petitioner and the $142,392.60 required to complete the $1,500,000, the latter sum being charged to him by Bancitaly and ultimately paid by him out of compensation later earned and credited to him on Bancitaly's books.

The two amounts are in wholly different categories and are not comparable. The first was never paid to petitioner but was donated by Bancitaly to the University. The item of $142,392.60 was paid by Bancitaly but was ultimately assumed and paid by petitioner out of other earnings. The petitioner felt morally responsible for his inaccurate calculation or estimate of Bancitaly's probable profits for 1927 and, therefore, personally made good the deficiency. Such sequential action on his part had no effect on that part of the compensation for 1927 which he had previously renounced and in which he had abandoned all interest.

The second issue presents an unusual situation. The petitioner received from the Giannini Co. during the year 1928 the sum of $78,749.50 pursuant to the action of its board of directors dated January 28, 1929, which in turn referred to the original agreement created by its action on January 25, 1926. Both the petitioner and the respondent agree that the amount should be included in the petitioner's income for 1928, but both designate and term the question an issue in the present case. As is frankly stated by the petitioner's counsel, we are asked to construe the so-called "profit-sharing contract," in order that its effect upon the sharing of losses thereunder in subsequent years may be determined.

We do not have the later years before us and, hence, confine ourselves to approving the action of the respondent. There is no controversy over the respondent's determination as to the instant year. Whether or not the petitioner later sustained losses under his agreement with the Giannini Co. and the tax effect of such losses, if sustained, must await decision when, if ever, the later years are before us.

*Decision will be entered under Rule 50.*

